UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVAUGHN MICHAEL WILSON,

                    Petitioner,                   Case Number 4:14-cv-12951
                                              Honorable Linda V. Parker

DAVID BERGH,

                    Respondent.

_____/

## OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 4] AND GRANTING A CERTIFICATE OF APPEALABILITY

Devaughn Michael Wilson ("Petitioner"), a Michigan Department of Corrections prisoner, with the assistance of counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges two convictions from the Circuit Court for Oakland County, Michigan: assault with intent to commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227(b). Petitioner asserts he was denied the effective assistance of counsel when his trial attorney failed to present two witnesses at trial.

This matter is before the Court on Respondent's motion for summary judgment, in which he argues that the petition is time-barred pursuant to the Antiterrorism and Effective Death Penalty Act's (AEDPA) statute of limitations,

28 U.S.C. § 2244(d)(1).  Petitioner filed a response to the motion asserting that the untimeliness of his petition should be excused because he is actually innocent.  For the reasons that follow, the Court is granting Respondent's motion because the petition was untimely filed, and Petitioner fails to demonstrate that he is actually innocent.

## I.  Background

This case involves a shooting on a residential street in Pontiac, Michigan, on the evening of June 11, 2005.  At trial, the evidence showed that Petitioner and three other men were gathered in front of Petitioner's house.  When a Monte Carlo drove by, words were exchanged between the occupants of the car and the group of men standing in front of Petitioner's house.

The Monte Carlo stopped in the middle of the street approximately 280 feet from Petitioner's house, near the residence of Mary Jackson.  Jackson was working in the yard with her son, Levoy Garner.  Jackson and Garner testified that the men standing in front of Petitioner's house stepped into the street and then shots were fired in the direction of the Monte Carlo, which then drove away.  (10/18/05 Trial Tr. at 184-86, ECF 6-5; 10/21/05 Trial Tr. at 18, ECF 6-7.)  Two stray bullets hit Isis Martin in the head, who was sitting on her front porch across the street from Jackson.

Jackson identified Petitioner as the individual who fired a handgun towards the Monte Carlo. (10/18/05 Trial Tr. at 193, ECF 6-5.) According to Jackson, Petitioner stood out from the rest of the group because he was wearing a black or dark-colored shirt and the other men were wearing white shirts. (*Id.* at 193.) Jackson testified that a few hours before the shooting, she drove past Petitioner's house on her way home and noticed that he was wearing a black shirt and black pants. (*Id.* at 179.)

Neither Martin nor Garner could identify the shooter, but both testified that the individual was wearing dark-colored clothing. (10/20/05 Trial Tr. at 19, 39, ECF 6-6; 10/21/05 Trial Tr. at 9, 21, ECF 6-7.) In addition, Officer Casey Crampton with the Pontiac Police Department testified that he responded to the dispatch call, and that when he arrived on Fisher Street he was flagged down by an individual who described the shooter as wearing a black shirt. (10/20/05 Trial Tr. at 101, ECF 6-6.) Another testifying witness, Cal Clark, did not see who fired the shots. (10/21/05 Trial Tr.at 56, ECF No. 6-7.)

Deputy Robert Charlton, a crime scene investigator and firearm tool mark examiner with the Oakland County Sheriff's Office, testified that five bullet casings were collected from the scene and tested. (10/20/05 Trial Tr. at 122-23, ECF 6-6.) Charlton, as an expert, concluded that all of the casings were fired from the same .25 caliber semi-automatic handgun. (*Id.)*

3

Justin Jones, the Petitioner's only witness at trial, was eleven years old at the time of the shooting. Jones testified that there were two shooters among the group of men outside Petitioner's house: one with a "big gun," and one with a "little gun." (*Id.* at 122.) Jones also recalled hearing only three gunshots. (*Id.* at 7-8.)

The jury found Petitioner guilty as charged. (10/24/05 Trial Tr., ECF 6-8.)

In March 2006, Petitioner filed an appeal of right. On May 1, 2007, the Michigan Court of Appeals issued an unpublished opinion affirming Petitioner's convictions. *People v. Wilson*, No. 269033, 2007 WL 1263988 (Mich. Ct. App. May 1, 2007). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which the Court denied on September 10, 2007. *People v. Wilson*, 737 N.W.2d 745 (Mich. 2007).

On July 29, 2010, Petitioner filed a pro se motion for relief from judgment in the trial court, attaching an affidavit from Jackson in which she recanted her trial testimony. Jackson claimed that she only identified Petitioner as the shooter because officers had told her that he had confessed. The trial court appointed counsel for Petitioner, and an evidentiary hearing was held. Contrary to her trial testimony, Jackson testified at the hearing that she did not see who fired the shots, and that she identified Petitioner as the shooter because he was the only person in the group she recognized.

4

The trial court rejected Jackson's recanting testimony in its opinion denying

Petitioner relief:

> After conducting an exhaustive evidentiary hearing in which Mary
> Jackson testified regarding the Recanting Allegations, based on the
> Court's assessment of the credibility, demeanor, veracity, vocal tone
> and expression, tonality, and honesty of the witness, exhibits, and
> reasonable inferences of the same, the Court finds that the evidentiary
> hearing testimony and the Recanting Affidavit of Mary Jackson is
> inherently unreliable, incredible, and should possess no weight
> whatsoever.

(6/1/11 Op. & Order at 7, ECF No. 6-16.)

Petitioner filed a delayed application for leave to appeal that decision in the

Michigan Court of Appeals on June 1, 2012. He supported the application with

additional affidavits. In the first affidavit, Christopher Stokes claimed he was one

of the men in Petitioner's group and that two other members of the group were the

shooters. (5/30/12 Aff. at 25, ECF 6-33.) In a second affidavit, Wayne Wilson,

Petitioner's father, claimed that he informed Petitioner's counsel about Stokes'

account prior to trial. (5/30/12 Aff. at 30, ECF 6-33.)

On February 22, 2013, the Michigan Court of Appeals denied Petitioner's

application. *People v. Wilson*, No. 310559 (Mich. Ct. App. Feb 22, 2013); (Order,

ECF 6-19.) Petitioner filed an application for leave to appeal to the Michigan

Supreme Court, which the Court denied on July 30, 2013. *People v. Wilson*, 834

N.W. 2d 497 (Mich. 2013).

Petitioner filed the habeas petition now before this Court on July 28, 2014.

## II.  Discussion

Under the AEDPA, a one-year statute of limitations applies to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court. The one-year limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Absent tolling, a petition for writ of habeas corpus must be dismissed where it has not been filed before the limitations period expires.  *See* 28 U.S.C. § 2244(d)(1); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

In his response to Respondent's motion for summary judgment, Petitioner does not dispute that the statute of limitations began to run for purposes of his habeas petition when his conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review."  § 2244(d)(1)(A). "Direct review," for purposes of § 2244(d)(1)(A), concludes when the availability

of direct appeal to the state courts and to the United States Supreme Court has been exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). The Michigan Supreme Court denied Petitioner's application for leave to appeal on September 10, 2007. The time for filing a petition for a writ of certiorari in the United States Supreme Court expired ninety days later, on December 9, 2007, with Petitioner not filing a petition. The limitations period began running the next day, and it expired one year later – years before the instant petition was filed.

The pendency of the proceedings with respect to Petitioner's state post-conviction motion from March 22, 2011 until September 3, 2013, did not toll the limitations period under § 2244(d)(2) because the limitations period had already expired when Petitioner filed his post-conviction motion. The filing for state post-conviction review does not reset the limitations period. *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001).

Petitioner does not dispute these calculations in his response to Respondent's motion. Rather, Petitioner asserts he is entitled to equitable tolling because he is actually innocent as demonstrated in Jackson's recanting testimony and Stokes' affidavit. Both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have held that a credible claim of actual innocence may equitably toll the one-year statute of limitations. *McQuiggin v.*

*Perkins*, -- U.S. --, 133 S. Ct. 1924, 1928 (2013); *Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005).

"To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)); *see also House v. Bell*, 547 U.S. 518, 537-39 (2006). Furthermore, a credible claim of actual innocence "requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial." *Souter*, 385 F. 3d at 590; *Schlup*, 513 U.S. at 324. "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Souter*, 385 F. 3d at 590; *Bousley*, 523 U.S. at 623. Factual innocence may also be established by a credible declaration of guilt by another. *See Sawyer v. Whitley*, 505 U.S. 333,340 (1992); *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996). In keeping with Supreme Court authority, the Sixth Circuit has recognized that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 321).

Jackson's recantation testimony does not demonstrate Petitioner's innocence under this standard because the state court found it to be false. Pursuant to 28

8

U.S.C. § 2254(e)(1), a determination of a factual issue made by a state court is presumed correct unless rebutted by clear and convincing evidence. *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir. 2003). The presumption particularly applies to credibility determinations, as the Supreme Court has ruled that such determinations by a state court are entitled to "special deference" by the federal courts. *Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985). The presumption of correctness applies to factual findings made by state courts with respect to actual-innocence claims. *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010); *Goldblum v. Klem*, 510 F.3d 204, 212 n. 13 (3rd Cir. 2007).

The state trial court held an evidentiary hearing at which the veracity of Jackson's recantation was tested. After the hearing, the trial court found Jackson's new testimony and the statements in her affidavit not credible. Petitioner offers reasons why this Court should disagree with the trial court's determination. He claims that her recantation testimony was more credible than her trial testimony because Jackson was too far away to firmly identify Petitioner, that Petitioner was in a group, that Jackson was inconsistent about details of the incident, that she disliked Petitioner's family, and that the other eyewitnesses could not identify the shooter. These types of arguments, however, do not suffice to overcome the presumption of correctness afforded the trial court's factual determination that

9

Jackson's new testimony is untrue.  *See Rice v. Collins*, 546 U.S. 333, 341-42

(2006).  "Reasonable minds reviewing the record might disagree . . . but on habeas

review that does not suffice to supersede the trial court's credibility

determination."  *Id.*  Therefore, Petitioner may not rely on Jackson's recantation to

support his claim of actual innocence.

       Petitioner also points to Stokes' affidavit to support his innocence claim.

Stokes asserts he saw two other men shoot towards the Monte Carlo, and Petitioner

was not armed.  Petitioner's father states he knew about Stokes' information and

told Petitioner's trial attorney about Stokes before trial.  These allegations, not

presented to the state trial court, do not meet the standard for demonstrating actual

innocence.  A reasonable juror might question the credibility of witnesses known

by and associated with Petitioner.  *See, e.g.*,  *McCray v. Vasbinder*, 499 F.3d 568

(6th Cir. 2007).

       Additionally, timing is a factor bearing on the reliability of Stokes' affidavit.

*McQuiggin*, 133 S. Ct. at 1936 (finding error in the court of appeals' elimination of

timing as a relevant factor in evaluating the reliability of a petitioner's proof of

innocence and holding that "[u]nexplained delay in presenting new evidence bears

on the determination whether the petition has made the requisite showing.").

Courts "may consider how the timing of the submission and the likely credibility

of the affiants bear on the probable reliability of that evidence."  *Schlup*, 513 U.S.

at 322.  Here, Stokes did not sign his affidavit until May 30, 2012.  Neither

Petitioner nor Stokes offers a convincing explanation as to why it took more than

six years after Petitioner's conviction to present Stokes' statement to a court.  As

such, Stokes' new account of the shooting is not the type of evidence that

establishes that "it is more likely than not that no reasonable juror would have

convicted him."  *Bousley*, *supra*.

### III.  Conclusion

For the reasons set forth above, the Court is granting Respondent's motion

for summary judgment, and dismissing the petition for writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue.

*See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability

may issue "only if the applicant has made a substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the

merits, the substantial showing threshold is met if the petitioner demonstrates that

reasonable jurists would find the court's assessment of the claim debatable or

wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  When a court denies

relief on procedural grounds without addressing the merits, a certificate of

appealability should issue if it is shown that jurists of reason would find it

debatable whether the petitioner states a valid claim of the denial of a

constitutional right, and that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling.  *Id.*  While the Court concludes that Petitioner's habeas petition is untimely and that he is not entitled to equitable tolling, the Court believes that the issue of whether Petitioner is entitled to equitable tolling may be "debatable among jurists of reason."  The Court therefore is granting Petitioner a certificate of appealability with respect to that issue, only.

Accordingly,

**IT IS ORDERED**, that Respondent's motion for summary judgment is **GRANTED**;

**IT IS FURTHER ORDERED**, that Petitioner's application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**;

**IT IS FURTHER ORDERED**, that a certificate of appealability is **GRANTED** with respect to the issue of whether Petitioner is entitled to equitable tolling.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: June 30, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, June 30, 2015, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager

12